**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  14-23860-CIV-SIMONTON**

**MARGIE BERRIOS,**

        **Plaintiff,**

**v.**

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,**

        **Defendant.**

_____/

<u>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**</u>

      Presently pending before the Court are Plaintiff's Motion for Summary Judgment, ECF No. [17], and Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment, ECF No. [20]. The parties also filed replies in support of their motions for summary judgment, ECF Nos. [22] [25]. Based upon the consent of the parties, the Honorable Kathleen M. Williams, United States District Judge has referred the matter to the undersigned to take all necessary and proper action as required by law, through and including trial by jury and entry of final judgment, ECF No. [14]. The summary judgment motions are now ripe for disposition.

      For the reasons stated below, the undersigned GRANTS the Plaintiff's Motion for Summary Judgment, ECF No. [17], and DENIES the Defendant's Motion for Summary Judgment, ECF No. [20].  The case is REMANDED to the Commissioner with instructions for the ALJ to fully assign a weight to the Plaintiff's treating psychiatrist, Dr. Hernandez, assign a weight to the opinion of Dr. Pfeffer, re-evaluate the opinion of Dr. Brode, re-evaluate the Plaintiff's residual functional capacity, and re-evaluate the Plaintiff's credibility in accordance with this Order.

## I.   PROCEDURAL BACKGROUND

On June 30, 2011, the Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income.  (R. 234-246).[1]  The Plaintiff alleged disability commencing on June 1, 2007. (R. 234, 238).[2]  Both claims were denied at the initial and reconsideration levels.  (R. 162-72, 176-85).  On November 21, 2012, a hearing was held before an ALJ, where the Plaintiff testified and was represented by counsel.  (R. 49-73).  A vocational expert ("VE") also testified at the hearing.  (R. 62-73).  On February 8, 2013, the ALJ issued an opinion denying the Plaintiff's applications.  (R. 29-42).  The Appeals Council denied the Plaintiff's request for review on August 18, 2014.  (R. 1-5).   The Appeals Council's decision, became the final decision of the Commissioner, and thereafter the Plaintiff commenced the present action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).

## II.   LEGAL ISSUES PRESENTED

In her Motion for Summary Judgment, the Plaintiff contends that the ALJ's decision is not based on substantial evidence.  Specifically the Plaintiff asserts that the ALJ failed to properly assess the opinion evidence of record, failed to conduct a proper credibility assessment, and improperly determined the Plaintiff's residual functional capacity ("RFC"), ECF No. [17] at 3.

---

[1] The letter "R", followed by a page number is used to designate a page in the Administrative Record, which is contained in ECF No. [11].

[2] The decision of the Administrative Law Judge, ("ALJ"), references previously filed concurrent applications for Title II Disability Benefits and Title XVI Supplemental Security Income.  (R.29). An ALJ decision on the merits was issued on July 13, 2010, denying those applications.  (R. 77-95).  The ALJ states that on June 3, 2011, the Appeals Council denied the Plaintiff's request for review of the decision (R.29).  Therefore, while the Plaintiff's stated alleged onset date is June 1, 2007, the period at issue in this case runs from July 14, 2010, the day after the previous ALJ's decision through February 8, 2013, the date of the instant ALJ's decision.

The Defendant contends in its Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment that substantial evidence supports the ALJ's evaluation of the medical opinion evidence and the ALJ's RFC finding, and that the ALJ properly determined that the Plaintiff's statements were not fully credible, ECF No. [20] at 1-2.

### III.   PLAINTIFF'S BACKGROUND AND MEDICAL HISTORY

#### A.   Background

The Plaintiff was born on November 19, 1959, and was 50 years of age on July 14, 2010. (R. 234, 268.)  The Plaintiff has an eleventh grade education and past work experience as a fast food worker, hospital cleaner, and a house cleaner/day laborer. (R. 56, 66 ).

The Plaintiff stated that she has not been able to perform any substantial gainful activity since June 1, 2007, due to stroke, diabetes, high blood pressure, knee trouble, depression, anxiety, bipolar disorder and a sleep disorder. (R. 267).  The Plaintiff is 5 feet 2 inches and weighs 200 pounds. (R. 58).

The Plaintiff reported living with her fourteen year old daughter in a rented home. (R. 57).  The Plaintiff receives Section 8 assistance in addition to $267 a month in food stamps. (R. 57).  She also receives child support from the father of her daughter. (R. 57).

#### B.   Plaintiff's Physical Impairments

##### i.   Treating Physician: Dr. Susana Gonzalez

Since February 2008, the Plaintiff has been treated regularly by Dr. Susana Gonzalez at Mount Sinai Medical Center for her physical medical impairments including high blood pressure, hypertension and diabetes. (R. 382-463).  Treatments notes and lab results indicate that the Plaintiff's diabetes and high blood pressure remain uncontrolled during the relevant time period. (R. 523, 385, 387, 389, 390).  The last treatment note from

3

Dr. Gonzalez in the record is dated October 3, 2012, and indicates that the Plaintiff's glucose and blood pressure were elevated and that the Plaintiff was not compliant with her medication. (R. 522-523).

ii.    Examining Physician: Dr. Michael Pfeffer

On September 6, 2011, a consultative examiner, Dr. Michael Pfeffer, a neurologist completed an internal medicine examination. (R. 465-469).   Dr. Pfeffer noted that the Plaintiff was on the following medication: Klonopin, Lamotrigine, Temazepam, Prozac, Diovan, Synthroid, Tricor, Lisinopril, Singulair, Simvastatin, Metformin, Humulin insulin, and Nifedical. (R. 466).  He noted that the Plaintiff had a long history of insulin-dependent diabetes and reported a chronic loss of sensation, including numbness and tingling in her feet. (R. 465).  Dr. Pfeffer found that the Plaintiff "was emotionally labile but otherwise in acute distress." (R. 467).  He found that her gait was normal and she was able to toe walk, although she was unable to heel walk. (R. 467).  He noted that the Plaintiff was able to do a partial squat and had a normal stance. (R. 467).  He also noted that she did not use any assistive device and did not need assistance in getting on or off the exam table. (R. 467).  He found that the Plaintiff was obese but found that there were no musculoskeletal abnormalities. (R. 437).  Dr. Pfeffer did find however that the Plaintiff had stocking-type hypesthesia from the toes to the mid-shin level bilaterally to light touch and pinprick. (R. 468).  Mentally, he noted that the Plaintiff appeared oriented in all spheres and there was no evidence of hallucinations or delusions. (R. 468).  Dr. Pfeffer said that there was no evidence of impaired judgment or significant memory impairment, but noted that the Plaintiff's affect was depressed. (R. 468). Her blood pressure was 190/110 (R. 466).  He diagnosed the Plaintiff with Diabetes, insulin dependent, poorly controlled; hypertension, poorly controlled; history of gout; hypothyroidism; history of

4

major depression; history of bi-polar disorder; history of anxiety and panic disorder; and obesity. (R. 468). His prognosis for the Plaintiff was guarded. (R. 468).

Ultimately, Dr. Pfeffer found that the Plaintiff had limitations with regard to unprotected heights, prolonged standing, climbing or walking. (R. 469).

### iii.   Reviewing Physicians: Drs. Sunita Patel and Maria Largarde

In connection with the second State agency review of the Plaintiff's file in November 2011, Dr. Patel reviewed the record and concluded that the Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, and could stand and/or walk for about six hours and could sit for about six hours. (R. 1557-157).

On February 29, 2012, Dr. Legarda reviewed the file and case analysis. (R. 491). Dr. Legarda noted the recommendation for avoidance of unprotected heights and prolonged standing, walking and climbing. (R. 491). Dr. Legarda concluded that the evidence supported an RFC for light work. (R. 491)

### C.   Plaintiff's Mental Impairments

#### i.   Dr. Nelson Hernandez, M.D.

The Plaintiff was seen by Dr. Hernandez, a psychiatrist beginning in 2008 (R. 381). During the adjudicatory period, The Plaintiff was seen by Dr. Hernandez seven times. (R. 367-370, 478-479, 532-534). The treatment notes generally indicate that Dr. Hernandez found the Plaintiff to be depressed, impulsive, labile, and anxious (R. 367-370, 479, 432, 485). Dr. Hernandez stated that the Plaintiff had fair insight, judgment, and reliability (367-370). On January 16, 2012, Dr. Hernandez conducted a mental status examination and found that the Plaintiff had retarded behavior and a dysphonic affect.  (R. 532). He found that the Plaintiff's concentration, appetite, and judgment were fair and her memory

5

impaired.  (R. 532).  He diagnosed the Plaintiff with Bipolar Disorder.  (R. 532).

Additionally, Dr. Hernandez assigned a GAF score of 48.  (R. 532).[3]

On February 6, 2012, Dr.  Hernandez completed a medical assestment of ability to

do work-related activities.  (R. 485-486).  Dr. Hernandez found that the Plaintiff had poor

ability to do the following:  follow work rules, relate to co-workers, deal with public, use

of judgment, interact with supervisors, deal with work stress, function independently,

and maintain attention/concentration, she also had poor ability to understand remember

and carry out complex job instructions; understand remember and carry out detailed but

not complex job instructions; and understand and carry out simple job instructions.[4]  (R.

485).  Dr. Hernandez further found that the Plaintiff had poor ability to maintain personal

appearance, behave in an emotionally stable manner, relate predictably in social

situation, and demonstrate reliability.  (R. 486).  Dr. Hernandez found that the Plaintiff had

irritable/impulsive behavior, severe mood changes, and was depressed and sad.  (R.

486).  He concluded that the Plaintiff would be unable to work due to memory defects and

the lack of impulse control.  (R. 486).

On October 29, 2012, Dr. Hernandez completed another medical assessment of

ability to do work related activities (R. 537-538).  His conclusions were consistent with

his conclusions from the February assessment, although he found the Plaintiff's ability

---

[3] The GAF scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without considering any impaired functioning due to physical or environmental limitations. *Am. Psych. Ass'n., Diagnostic and Statistical Manual of Mental Disorders* ("DSM–IV") at 32 (4th ed. text rev. 2000). A GAF score represents a subjective determination (based on a scale of 100 to 1) of a patient's overall level of functioning. Id. A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas such as work, family relations, judgment, thinking or mood; a score of 41–50 indicates serious symptoms; a score of 51–60 indicates moderate symptoms; and a score in the range of 61–70 indicates mild symptoms. *Id.* at 32–34.

[4] Poor is defined as seriously limited but not precluded.

to maintain personal appearance fair as opposed to poor. (R. 537-538).  He found that the Plaintiff continued to have difficulty with impulse control, although some improvement was noted.  (R. 537).  He found that the Plaintiff remained labile, hostile and unpredictable, and did not have the ability to manage her benefits in her own best interests.  (R. 537-538)

### ii.  Dr. Sally Rowley, Psy.D.

On September 22, 2011, Dr. Rowley completed a Psychiatric Review Technique form.  (R. 109-110).  Dr. Rowley found that the Plaintiff had severe affective disorder and non-severe anxiety (R. 109).  Dr. Rowley found that the Plaintiff had mild restrictions of daily living and moderate difficulties in maintaining social functioning and concentration, persistence, or pace.  (R. 109).  In the accompany Mental RFC, Dr. Rowley concluded that the Plaintiff's ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness were not significantly limited and that the Plaintiff had adequate social skills, could work around people, but would do better not working with the general public.  (R. 113).

### iii.  Dr. Barbara Lewis, Ph.D.

On November 17, 2011, Dr. Lewis completed a Psychiatric Review Technique form (R. 154).  Dr. Lewis stated that she reviewed the Plaintiff's file, including the information that was added after Dr. Rowley's review and affirmed Dr. Rowley's assessment.  (R. 154).

### iv.  Dr. Tawnya Brode, Psy,D.

On February 29, 2012, Dr. Brode completed a Psychiatric Review Technique form. (R. 492-502).  Dr. Brode diagnosed the Plaintiff with an affective disorder and anxiety.  (R. 492).  She found that the Plaintiff had a depressive syndrome characterized by anhedonia, appetite disturbance, sleep disturbance, psychomotor agitation or

retardation, decreased energy, difficulty thinking, and hallucinations, delusions or paranoid thinking. (R. 494).  Dr. Brode noted moderate restrictions of activities of daily living and in maintaining social functioning.  (R. 500).  She found marked difficulties in maintaining concentration, persistence or pace.  Ultimately, Dr. Brode concluded that an overall review of the Plaintiff's records indicated that the Plaintiff "would not be capable of sustaining a workday/week." (R. 502).

IV. <u>HEARING TESTIMONY</u>

A. <u>Plaintiff's Testimony</u>

At the hearing, the Plaintiff testified that the last time she worked was in 2007 as a housekeeper at a nursing home (R. 56).  She stated that she lives with her fourteen year old daughter and rents her home with the assistance of a Section 8 voucher.  (R. 57).  She explained that she receives $267 a month in food stamps and an unspecified amount in child support payments. (R. 57).

The Plaintiff testified that she can't work because of pain in her legs.  (R. 58).  She stated that if she walks for a block they hurt and she gets tired.  (R. 58).  She also stated that she can't work because of her depression.  (R. 58). The Plaintiff explained that she is "a bipolar person" and has mood swings and changes in character.  (R. 59). The Plaintiff testified that she spends the day sleeping, and if it were not for her daughter, she would not get up from the bed. (R. 59).  She stated that she has a television at home but is not able to follow the plot of programs or follow a newspaper article from beginning to end. (R. 60).  The Plaintiff testified that she sometimes remembers to take her medications on time and at other times she has to be reminded. (R. 60).  The Plaintiff stated that she takes her medication and insulin for diabetes but it is not under control.  (R. 61).  As related to activities of daily living, the Plaintiff testified that she can do some chores on

her own when she is feeling well but there are other times where she is not able to complete household chores.  (R. 62).

### B.   Vocational Expert Testimony

Gary R. Fannin testified as an impartial VE. (R. 62-72).  The VE testified that the Plaintiff had past relevant work as a fast food worker, hospital cleaner, house cleaner/day laborer and stock selector.  (R. 63-67).  The ALJ posited the following hypothetical:

> Assume a hypothetical claimant the same age, education and work experience as this claimant with the following limitations: assume that such a hypothetical claimant is able to lift and/or carry, including lift, push, pull, carry, including upward pulling, 20 pounds occasionally and ten pounds frequently; assume that such a hypothetical claimant were able to stand and/or walk with normal breaks for six hours in an eight hour day; and that such a hypothetical claimant were able to sit with normal breaks for up to six hours in an eight hour day; assume the [sic] such hypothetical claimant should avoid climbing ladders, ropes or scaffolds or working at unprotected heights; but can climb ramps, stairs; assume that such a hypothetical claimant can occasionally balance, kneel, crouch and crawl; with no other postural limitations. Environmentally should avoid unprotected heights. Mentally, assume that such a hypothetical claimant can do the following: is able to understand, remember and carry out simple, routine repetitive tasks; is able to sustain attention and concentration for two hour periods at a time and for eight hours in a workday in simple, routine repetitive tasks; also assume that such a hypothetical claimant is able to use make—use judgment in making work related decisions on simple, routine, repetitive tasks; requires occupation with only occasional coworker contact and supervision; requires occupation with set routine and procedures and few changes during the workday; and superficial contact with the public on routine matters; is able to maintain regular attendance and be punctual within customary tolerances and perform activities within a schedule.

(R. 69-70).

The VE testified that such a hypothetical claimant would only be able to perform the Plaintiff's past work as a stock selector if the position was done at light capacity.  (R. 70).  The VE stated that such a hypothetical claimant would be able to

perform work as a silverware wrapper, cafeteria attendant, and as a hotel housekeeper. (R. 70-1).

Additionally, the VE testified that if the above-listed hypothetical claimant was not able to sustain attention and concentration for more than two-thirds of the day, there would be no work that the hypothetical claimant could perform. (R. 71).

When asked by the Plaintiff's counsel if a claimant with the same vocational background as the Plaintiff who was not capable of sustaining a workday or a workweek would be able to engage in the Plaintiff's past work, the VE stated no.  (R. 72).

Finally, the VE found that a hypothetical claimant with the same above-listed limitations who also had poor ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, understand and carry out complex and detailed an simple job instructions would not be able to engage in any type of work. (R. 73).

## V.   STANDARD OF REVIEW

Judicial review of the ALJ's decision in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's factual findings and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.* 363 F.3d 1155, 1158 (11th Cir. 2004); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial evidence" is more than a scintilla, but less than preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

When reviewing the evidence, the Court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence "preponderates" against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989). This restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, which are reviewed *de novo*, including the determination of the proper standard to be applied in reviewing claims. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991) ("The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); *Martin v. Sullivan*, 894 F.2d at 1529.

## VI.   FRAMEWORK FOR ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his . . . impairment [is] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other . . . substantial gainful work." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration applies a five-step sequential analysis to make a disability determination. 20 C.F.R. § 416.920(a).[5] The analysis follows each step in

---

[5] Plaintiff has claimed disability under both Title II, which governs disability insurance benefits and has insured status requirements, and Title XVI, which governs entitlement to Supplemental Security Income where the insured status requirements are not met. The same analysis is used under both Titles to determine whether a claimant is disabled, and identical regulations have been promulgated with respect to the disability determination. In this Order the claims are treated together, and only the regulations

order, and as explained in more detail below, the analysis ceases if, at a certain step, the claimant is found, as a matter of law, either to be disabled or not disabled. Step one involves a determination of whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(b).  "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 416.972(b). If an individual has been participating in substantial gainful activity, he or she will not be considered disabled, despite the severity of symptoms, their age, education, and work experience, regardless of physical or mental impairment, and the analysis ends. *Id.* The analysis proceeds to step two if the individual is not engaging in substantial gainful activity.

At the second step, the claimant must establish that he has a severe impairment. Step two has been described as the "filter" which requires the denial of any disability claim where no severe impairment or combination of impairments is present. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).   This step has also been recognized as a "screening" to eliminate groundless claims.  *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987).  The ALJ makes a severity determination regarding a classification of the claimant's medically determinable impairment or combination of impairments.  20 C.F.R. § 416.920(c).  To be severe, an impairment or combination of impairments must significantly limit an individual's ability to perform basic work activities.  The regulations define these activities as the abilities and aptitudes necessary to do most jobs, and include physical functions; the capacity to see, hear, and speak; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to

applicable to Title XVI, contained in 20 C.F.R. Part 416, have been cited; the identical Title II regulations, contained in 20 C.F.R. Part 404, have been omitted.

others in usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.921.

The ALJ need only find that the claimant has "at least one" severe impairment in order to advance to step three of the analysis.  *Jamison*, 814 F.2d at 588.  "There is no need for an ALJ to identify every severe impairment at step two."  *Tuggerson-Brown v. Comm'r of Soc. Sec.*, No. 13-14168, 2014 WL 3643790, at *2 (11th Cir. Jul. 24, 2014).  Thus, as long as one severe impairment is found, there can be no error at step two based on the failure of the ALJ to identify other severe impairments since the existence of other severe impairments would not change the outcome at step two.  Stated another way, the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability, and the analysis ends.  As long as there is one severe impairment, the analysis proceeds to step three regardless of whether there are other severe impairments.

The third step requires the ALJ to consider if the claimant's impairment or combination of impairments are at the level of severity to either meet or medically equal the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. ("the Listings").  20 C.F.R. §§ 416.920(d), 416.925, 416.926.  A claimant is considered to be disabled, and is awarded benefits without further analysis, if his or her impairment or combination of impairments: 1) is severe enough to meet or to medically equal the criteria of a Listing; and, 2) meets the duration requirement under 20 C.F.R. § 416.909.  If the claimant's impairment or combination of impairments does not meet these two criteria, then the ALJ must proceed to the fourth step to determine if the claimant is nevertheless disabled.

Step four is a two-pronged analysis that involves a determination of whether the impairments prevent the claimant from performing his past relevant work.  First, the ALJ makes a determination of the claimant's "RFC" as described in 20 C.F.R. §§ 416.920(e),

13

416.945.[6]  In making this determination, the ALJ must consider all of the claimant's impairments, regardless of the level of severity. 20 C.F.R. §§ 416.920(e), 416.945; SSR 96-8p; *Tuggerson-Brown,* 2014 WL 3643790, at *2 (an ALJ is required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation).

The second phase of step four requires a determination of whether the claimant has the RFC to perform the requirements of his past relevant work.  20 C.F.R. § 416.920(f).  Relevant work has been defined as work performed within the last 15 years. This work must have been performed long enough so that: 1) the claimant could learn to do the job; and, 2) be considered substantial gainful activity.  20 C.F.R. §§ 416.960(b), 416.965.  If the claimant possesses the residual functional capacity to do his or her past relevant work, the claimant is considered not disabled and the inquiry ends.

If a claimant is not able to perform her past relevant work, the ALJ progresses to the fifth step.  At this step, the burden of production shifts to the Commissioner to show that other work that Plaintiff can perform exists in significant numbers in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. § 416.920(g).  In making this determination, the ALJ considers a claimant's RFC, age, education, and work experience to determine if the claimant can perform any other work.  20 C.F.R. § 416.920(g).  If the claimant can perform other work, the ALJ will make a finding that the claimant is not disabled.

---

[6]  Residual Functional Capacity measures a person's ability to do physical and mental work activities on a sustained basis despite limitations caused by impairments.

**VII.    THE SEQUENTIAL ANALYSIS PERFORMED BY THE ALJ**

In the case at bar, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 14, 2010, the beginning of the relevant adjudicatory period.  (R. 32).

At step two, the ALJ found that Plaintiff possessed the severe impairments of diabetes mellitus, hypertension, history of left knee osteoarthritis, obesity, bipolar disorder, depression and/or anxiety. (R. 32).

In step three, the ALJ found that Plaintiff's impairment or combination of impairments failed to meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 32).

In assessing step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work as defined in 20 C.F.R. 1567(b) and 416.967(b)7(c),

> except that the claimant can occasionally climb ramps and stairs but can never climb ladders, ropes or scaffolds.  She can occasionally balance, kneel, crouch and crawl. She is limited to occupations which do not require working at unprotected heights.  Mentally, the claimant is limited to occupations which require no more than the basic demands of unskilled work in that she can; understand, remember and carry out simple, routine repetitive tasks and instructions. She is able to sustain attention and concentration for 2-hour periods at time and for 8 hour in a workday on simple routine, repetitive tasks and instructions.  She requires occupation with only occasional co-worker contact and supervision, set routine and procedures, and few changes during the workday.  She can only have superficial contact with the public on routine matters.  She can maintain regular attendance and be punctual within customary tolerances and perform activities within a schedule.

(R. 34).

The ALJ concluded that given the Claimant's RFC, the Plaintiff was unable to perform any past relevant work. (R. 37).

15

At step five, based upon the testimony of the vocational expert, the ALJ found that, considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in the national economy that the Plaintiff can perform including silverware wrapper, cafeteria attendant, and cleaner/housekeeper (hotels). (R. 41).

### VIII.   LEGAL ANALYSIS

#### A.   The Opinion Evidence of Record

##### 1.   The Framework For Analyzing Medical Opinions

An ALJ is required to consider and explain the weight given to medical opinions such as those of the treating, examining, and consulting physicians. *See McCloud v. Barnhart*, 166 F. App'x 410, 419 (11th Cir. 2006). The opinion of a treating physician as to the nature and severity of an impairment is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary. The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Further, the ALJ must consider the following six factors in weighing the opinion of a treating physician: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportive evidence; consistency with the record as a whole; the area of specialization; and, other factors such as the familiarity of the physician with the evidentiary requirements of the Social

Security disability program, and the extent to which the physician is familiar with other evidence in the record.   20 C.F.R. § 416.927(c).

In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit Court of Appeals concisely set forth the following guidelines to apply in evaluating an ALJ's treatment of medical opinions:

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians substantial or considerable weight. Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate the reasons for doing so.
>
> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.  Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion.

(internal quotation marks and citations omitted).  In *Winschel*, the decision of the ALJ was reversed because the only reference to the treating physician noted that the claimant had seen the doctor monthly, but did not even mention the doctor's medical opinion.  In addition, the ALJ failed to discuss the pertinent elements of an examining physician's medical opinion.  The Court noted that it was possible that the ALJ had considered and rejected those opinions, but without clearly articulated reasons, the Court could not determine whether the ALJ's conclusions were supported by substantial evidence. 631 F.3d at 1179.  Similarly, the ALJ's rejection of a treating physician's opinion was error requiring remand where the ALJ had failed to reference the opinions in his decision and had merely noted that the claimant had been treated by the physicians,

*Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir. 2006); and, where the reasons given for according no weight to the opinion – that the opinion was internally inconsistent and at odds with other evidence in the record – was not supported by substantial evidence, *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

On the other hand, in *Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194-95 (11th Cir. 2012), the Eleventh Circuit found that the ALJ had not erred in giving little weight to the opinions of the claimant's treating psychiatrist, where the ALJ indicated she had done so "because they were inconsistent with [the doctor's] own findings, notes from the treatment plan, and the overall medical evidence," and the decision noted one example from the medical records.  490 F. App'x at 194-95.  *Accord Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (ALJ's rejection of treating physician's opinion was supported by substantial evidence where ALJ cited examples of inconsistencies with treatment notes and claimant's own admissions of what she could do).

In sum, if the ALJ fails to give at least great weight to the opinion of a treating physician, he must provide a sufficiently detailed analysis with examples to demonstrate why that opinion is discounted, and provide a rationale that will enable a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.

Applying these principles, the Eleventh Circuit recently issued two unpublished opinions where the district court's orders affirming the ALJ's denial of benefits was vacated and the cases were remanded for failure to adequately weigh the medical opinions in the record.  In *Martinez v. Acting Comm'r of  Soc. Sec.*, No. 15-14798, 2016 WL 4474675, at *2  (11th Cir. 2016), the Court rejected the ALJ's decision to not give the plaintiff's treating physician's opinion controlling weight because the ALJ found the opinions to be contradicted by the treating physician's contemporaneous clinical notes

18

and other evidence in the record. *Id.* at *2.  After reviewing the treatment notes and other medical records, the Court found that the opinions of the treating physician were not inconsistent with the other records. *Id.* at *3.   The Court thus concluded that had the treating physician's opinion been given controlling weight, the opinions would have been inconsistent with the ALJ's ultimate finding that the claimant was not disabled. *Id.*   As such, the Court reversed and remanded the case on that issue so that the ALJ could properly weigh the treating physician's opinions.

In *Baez v. Commissioner of Social Security*, No. 15-13941, 2016 WL 4010434, *3 (11th Cir. 2016), the reviewing Court concluded that the ALJ erred  in failing to assign weight to the opinion of the plaintiff's treating physician. *Id.* at *4.  In so doing, the Court stated that in evaluating medical opinions, the ALJ should consider factors such as the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record. *Id.,* citing 20 C.F.R.  §§ 404.1527(c), 416.927(c).

> 2.  The ALJ's Evaluation of the Medical Opinion Evidence of Record

>> a.   The ALJ'S Analysis of the Opinion of Examining Doctor, Dr. Pfeffer.

The Plaintiff contends that the ALJ failed to articulate the weight accorded to the opinion of the examining doctor, Dr. Pfeffer, ECF No. [17] at 12-14.

The Defendant asserts that although the ALJ did not expressly state the weight given to Dr. Pfeffer's opinion, the ALJ's decision reflected that the ALJ rejected Dr. Pfeffer's limitations and the reasons for rejecting the opinion, ECF No. [20] at 6-10.  The Defendants allege that because the ALJ stated with some measure of clarity the grounds for her decision, the Court can determine that the ALJ's decision is rational and supported by substantial evidence, ECF No. [20] at 6.  The Defendant concludes that a remand to specify the weight accorded to Dr. Peffer's opinion "would be a wasteful

corrective exercise that would not change the administrative result."  ECF No. [20] at 6.

The Defendant ultimately asserts that the exclusion of the weight assigned to Dr.

Pfeffer's opinion is harmless error.

 The Plaintiff counters that absent the ALJ assigning a particular weight to the

opinion of Dr. Pfeffer, it is impossible for a reviewing court to determine whether the

ALJ's decision is supported by substantial evidence, ECF No. [22] at 1.

In the ALJ's decision, she states the following regarding Dr. Pfeffer's opinion:

> In addition, on September 6, 2011, despite the claimant's
> complaints, the consultative examiner-neurologist Michael
> Pfeffer, M.D. noted that the claimant's diabetes and blood
> pressure were poorly controlled causing unspecified
> limitations to her prolonged standing, walking, climbing, and
> exposure to unprotected heights.  The examiner also noted
> however, that the claimant's gait and stance were normal and
> no assistive device was used.  She was able to toe walk.  She
> was able to do a partial squat.  The claimant needed no help
> changing for the exam or getting on and off the exam table.
> She was able to rise from a chair without difficulty. In
> addition, despite the claimant's testimony regarding
> problems with the right knee, there was no sign of a surgical
> scare or problems with her knee per se.  The claimant
> demonstrated full range of motion of the hips, knees, and
> ankles bilaterally. Joints were stable and non-tender with no
> redness, heat swelling or effusion.  The claimant had 4/5
> strength in the extremities, but [sic] which appeared to result
> from signs of diabetic hypoethesia in the lower extremities.  It
> is also noted, however, that there is little, if any, evidence of
> treatment for leg pain.  In fact, as previously noted, the
> October 3, 2012 treatment notes document that the claimant
> had a foot ulcer that had 'totally healed.'

(R. 38-39).

While the Defendant asserts that this Court can determine that the ALJ's decision

is rational and supported by substantial evidence based upon the above excerpt, it is not

clear to the undersigned to what extent the ALJ analyzed the opinion of Dr. Pfeffer. While

it is certainly clear that the ALJ read Dr. Pfeffer's opinion, it is impossible for the

undersigned to determine if in fact the ALJ was crediting the opinion or not.  While the

ALJ ultimately determines that the Plaintiff is capable of prolonged standing, it is not clear if or why the ALJ discounted the opinion of Dr. Pfeffer that the Plaintiff was in fact limited in her ability to stand for prolonged periods.  The requirement that the ALJ articulate the weight accorded to medical opinions exists for just this reason, because absent such a discussion and assignment of weight, it is impossible for the reviewing court to determine whether the ALJ's decision is supported by substantial evidence.

Finally, if the ALJ did not completely understand the full extent of Dr. Pfeffer's opinion as related to the Plaintiff's inability to stand for prolonged periods, the ALJ could have requested that Dr. Pfeffer more fully explain his opinion in an interrogatory.

As such, the undersigned finds that the ALJ committed error by not assigning a weight to the opinion of Dr. Pfeffer and that case should be remanded on that basis.[7]

b. ALJ's Analysis of Treating Physician Dr. Hernandez

The Plaintiff asserts that the ALJ erred by failing to articulate the weight accorded to the Plaintiff's treating psychiatrist's (Dr. Hernandez) opinion in its entirety, according inadequate weight to the opinions expressed by the treating psychiatrist, and repeatedly omitting clinically significant findings contained in the treating psychiatrist's treatment

---

[7] To the extent that the Defendant has argued that the ALJ's error was harmless, the undersigned finds that the error was not harmless as a determination that the Plaintiff had limitations in terms of prolonged standing would necessarily affect the Plaintiff's RFC, and therefore the determination of disability.  It appears that the VE's description of the work of a cleaner/housekeeper as a person who goes "from room to room cleaning hotel rooms" involved prolonged standing.  The description of "light work" provided in 20 C.F.R. § 416.967(b) states that "a job is in this category when it requires a good deal of walking or standing." In addition, the case law that the Defendant cites for this proposition are not analogous to the present case.  *See Hunter v. Comm'r Soc. Sec.,* 609 F. App'x 555, 558 (11th Cir. 2015) (finding that failure to state weight with particularity was harmless where physicians did not offer opinions as to how claimant's medical conditions would impact his ability to perform his past relevant work); *Newberry v. Comm'r Soc. Sec.,* 572 F. App'x 671, 672 (11th Cir. 2014) (finding harmless error where it was clear that the ALJ rejected doctor's opinion); *Tillman v. Comm'r Soc. Sec.,* 559 F. App'x 975-6 (11th Cir. 2014) (finding harmless error to fail to give weight to opinions where opinions offered by doctors concerned matters ultimately reserved for the Commissioner).

notes, ECF No. [22], at 3-7.  While the Defendant does not contest the assertion that Dr. Hernandez was the Plaintiff's treating physician, and thus his opinion is entitled to controlling weight absent good cause, the Defendant asserts that although the ALJ did not expressly state the weight afforded any opinions included in Dr. Hernandez's treatment notes, the ALJ's decision reflects that the ALJ implicitly found Dr. Hernandez's treatment notes were due little weight, ECF No. [20] at 8-11.  The Defendant further asserts that the Plaintiff has failed to demonstrate that any such error was harmful, ECF No. [20] at 8.

While the ALJ clearly stated that he afforded little weight to the two mental medical source statements completed by Dr. Hernandez, it is less clear what weight was assigned overall to Dr. Hernandez's opinion.  It is the opinion of the undersigned that it may be the case that the ALJ was intrinsically giving little weight to Dr. Hernandez's treatment notes, but because the case is being remanded for the ALJ to adequately determine the weight of Dr. Pfeffer's opinion, the ALJ will now also have the opportunity to clearly analyze and assign weight to the overall opinion of Dr. Hernandez.

Additionally, the undersigned notes that a review of Dr.  Hernandez's treatment notes indicate that they are not wholly inconsistent with Dr. Hernandez's mental medical source statements.  The notes reflect for example that the Plaintiff was compliant with the treatment plan and medication regimen, but continued to present as depressed with mood swings and fair insight and judgment.  (R. 367-370).  Also, Dr. Hernandez completed a Mental Status Examination on August 12, 2012, that noted that the Plaintiff, while having good concentration, was depressed, and some impulsiveness was present. (R. 533).  Dr. Hernandez found her judgment again to be fair, with moderate difficulties in social functioning.  (R. 533).  Dr. Hernandez again diagnosed the Plaintiff with bipolar disorder and assigned a GAF of 48. (R.33).

22

The case shall be remanded to the Commissioner to more fully analyze the opinion of Dr. Hernandez and assign a weight accordingly.

### c. ALJ's Analysis of Consulting Psychologist Tawnya Brode, Psy.D.

The Plaintiff asserts that the ALJ accorded inadequate weight to the opinion of State Agency Psychologist, Dr. Tawnya Brode, ECF No.[17] at 16-17.  The Defendant claims that the ALJ has provided sufficient support for her decision to give Dr. Brode's opinion little weight, ECF No. [20] at 12.

On February 29, 2012, Dr. Brode completed a Psychiatric Review Technique form. (R. 506).   Dr. Brode found that the Plaintiff had an affective disorder and an anxiety-related disorder.  (R. 492).  Dr. Brode found that the Plaintiff had moderate restriction in activities of daily living and maintaining social functioning (R. 500).  She additionally found that the Plaintiff had marked difficulties in maintaining concentration, persistence, or pace.  (R. 500).  Ultimately, Dr. Brode stated that while there is brief indication of improvement with medication, the treatment notes indicated that the Plaintiff continued to look unhappy and her activities of daily living fluctuated according to her mood, and could be limited at times.  (R. 502).  Dr. Brode ultimately concluded that Dr. Hernandez's medical source statement should be given controlling weight, and that it appeared that the Plaintiff was not capable of sustaining a workday/week. (R. 502).

The ALJ stated that Dr. Brode's opinion was given little weight "because it was not well supported and is inconsistent with the substantial evidence of record which is based almost entirely on the Plaintiff's self-reports." (R. 38).  The ALJ also pointed out that Dr. Brode failed to recognize the intermittency of treatment and failed to recognize that the Plaintiff was the sole caregiver of her minor child.

The Defendant is only partially correct in stating that as a non-examining doctor, the ALJ was not required to give any deference to Dr. Brode's opinion. Pursuant to 20 C.F.R. § 916.927(e)(i) the ALJ is not bound by the finding made by an non-examining physician, but the ALJ is still required to consider their findings and opinions, and provide appropriate analysis.  In the case at bar, it is not clear from the record what weight was accorded to the full opinion of the treating psychiatrist, Dr. Hernandez, and his treatment notes that the ALJ used to evaluate the opinion of Dr. Brode.  Moreover, the ALJ inaccurately stated that the notes were based on "self-reports" when in fact Dr. Hernandez performed mental status examinations.  It may well be that Dr. Brode's findings and opinions can properly be accorded little weight, but the above errors dictate that  the ALJ should reevaluate the opinion of Dr. Brode after conducting a re-assessment of the opinion and treatment notes of Dr. Hernandez.

B.     The Evaluation of the Plaintiff's Residual Functional Capacity

The Plaintiff alleges that the ALJ's RFC finding is not based upon the substantial evidence of record, ECF No. [17] at 17-18.  The Plaintiff asserts that the ALJ's RFC finding does not account for any of the function limitations opined by the Plaintiff's treating psychiatrist or the opinion of Dr. Pfeffer, ECF No. [17] at 17-18.  The Plaintiff states that by failing to properly assess the medical evidence of record, the ALJ's RFC finding is necessarily deficient, ECF No. [17] at 19.  The Defendant argues that substantial evidence supports the ALJ's RFC finding because the ALJ properly discounted the opinions of Drs. Hernandez, Brode, and Pfeffer, ECF No. [20] at 13.

The Plaintiff's allegations regarding the ALJ's evaluation of the Plaintiff's RFC in large part amount to a restatement of the allegations regarding the alleged failures of the ALJ to properly asses the opinion evidence of record.  The Defendant is correct in stating that the ALJ is not required to include limitations outlined in opinions that were

properly discounted in her RFC finding, however, because as outlined above, the ALJ failed to adequately assign weight, this assertion is of no import.   To the extent that the ALJ has failed to properly assess the opinion evidence as outlined above, the ALJ must now reconsider the Plaintiff's RFC taking into account those opinions.  In sum, the ALJ must now re-evaluate the Plaintiff's RFC based upon the whole record, including the re-evaluated opinions of Drs. Pfeffer, Hernandez, and Brode.

### C.    The Determination of the Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly assess the Plaintiff's credibility. ECF No. [17] at 19-20.  The Defendant asserts that the ALJ properly found that the Plaintiff's statements were not fully credible, ECF No. [20] at 15-16.

 In considering the Plaintiff's symptoms, the ALJ must follow a two-step process where it first must be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that could be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.  SSR 16-3p. Once this is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent that these limit Plaintiff's functioning. *Id*.  If statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.  *Id.*

The responsibility of the fact-finder, the ALJ, is to weigh the Plaintiff's complaints about his symptoms against the record as a whole; this falls to the ALJ alone to make this determination.  20 C.F.R. §§ 404.1529(a), 416.929(a).  A clearly articulated credibility finding supported by substantial evidence in the record will not be disturbed by a

reviewing court.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "[T]he ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony." *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).  If the ALJ decides not to credit such testimony, she must articulate explicit and adequate reasons for doing so.  *Hale v. Bowen*, 831 F. 2d 1007, 1011 (11th Cir. 1987).  A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir.1982).  That determination, however, may be affected by the lack of a fully developed record, and should be revisited on remand.   For this, the ALJ must examine the entire record.

In the case at bar, the ALJ concluded that the Plaintiff's "activities of daily living demonstrated that the Plaintiff may be more functional than alleged, and that her allegations may not be entirely credible."  (R. 39).

While the undersigned finds that the ALJ followed the appropriate procedure regarding the credibility determination, the undersigned has concerns regarding whether the determination is supported by substantial evidence in the record.  Based upon the need to re-evaluate the medical opinion evidence of record, however, it will be necessary to the ALJ to re-evaluate the credibility of the Plaintiff based upon the entirety of the record.[8]

Therefore, the undersigned finds that the case should be remanded for the ALJ to make new credibility assessment based upon a review of the record in its entirety.

---

[8] In this regard, the undersigned notes that the fact that the Plaintiff has sole custody of her fourteen year old daughter does not provide substantial evidence that the Plaintiff is not disabled, as the ability to parent a teenage child is not evidence that the Plaintiff would be able to sustain fulltime employment.  The undersigned recognizes, however, that the ALJ also relied on other evidence in the record.

## IX.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ erred by not discussing the opinions of several treating physicians and not considering the whole of the Plaintiff's record when evaluating the Plaintiff's RFC.  Therefore, in accordance with the above, it is herby

ORDERED AND ADJUDGED that the Plaintiff's Motion for Summary Judgment, ECF No. [17], is GRANTED, and that Defendant's Motion for Summary Judgment, ECF No. [20], is DENIED.  This matter is REMANDED to the Commissioner pursuant to 42 U.S.C § 405(g), with instructions for the ALJ to fully assign a weight to the Plaintiff's treating psychiatrist, Dr. Hernandez, assign a weight to the opinion of Dr. Pfeffer, re-evaluate the opinion of Dr. Brode, re-evaluate the Plaintiff's residual functional capacity, and re-evaluate the Plaintiff's credibility in accordance with this Order.

DONE AND ORDERED in chambers in Miami, Florida on September 30, 2016

*Andrea M. Simonton*

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies provided via CM/ECF to:
All counsel of record